# MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO
LAWRENCE S. BADER
BARRY A. BOHRER
CATHERINE M. FOTI
PAUL R. GRAND
LAWRENCE IASON
STEPHEN M. JURIS
JUDITH L. MOGUL
ROBERT G. MORVILLO
BARBARA MOSES*
JODI MISHER PEIKIN
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
JOHN J. TIGUE, JR.
BARBARA L. TRENCHER
CYRUS R. VANCE, JR.
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, N.Y. 10017

TELEPHONE
(212) 856-9600

www.maglaw.com

FACSIMILE
(212) 856-9494

WRITER'S DIRECT DIAL
(212) 880-9550
bbohrer@maglaw.com

COUNSEL
CHRISTOPHER J. MORVILLO
E. SCOTT MORVILLO
GREGORY MORVILLO

SENIOR ATTORNEY
THOMAS M. KEANE

MICHAEL C. SILBERBERG
1940-2002

*ALSO ADMITTED IN CALIFORNIA AND WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT

**CONTAINS CONFIDENTIAL INFORMATION PROTECTED PURSUANT TO SDNY PRIVACY POLICY[1]**

July 1, 2009

**BY FEDERAL EXPRESS**

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

      Re:     United States v. Samuel Israel III, 08 Cr. 723 (KMK)

Dear Judge Karas:

      We respectfully submit this letter on behalf of Samuel Israel III in connection with his sentencing, which is scheduled for July 15, 2009 at 10:00 a.m. Mr. Israel pled guilty on March 16, 2009, to one count of failing to appear for service of sentence, in violation of 18 U.S.C. § 3146(a)(2).

      The Probation Department has prepared a pre-sentence report ("PSR") that concludes that Mr. Israel's Sentencing Guidelines range is 12 to 18 months. Further, the Probation Department recommends that an appropriate sentence for Mr. Israel is 12 months imprisonment. For the reasons given below and in the PSR, we submit that the Probation Department's recommendation is appropriate in this case.

---

[1] See U.S. District Court for the Southern District of New York, Notice Regarding Privacy and Public Access to Electronic Civil and Criminal Case Files, available at http://www1.nysd.uscourts.gov/operations/egovtact042005.pdf (last visited June 30, 2009); Fed. R. Crim. P. 49.1. A redacted version of this letter has been publicly filed.

MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.

Honorable Kenneth M. Karas
July 1, 2009
Page 2 of 7

## Personal Background[2]

Mr. Israel was born in New Orleans, Louisiana on ▮▮▮▮, 1959, the middle child of three boys. His family was, and remains, a prominent and well-respected family in the New Orleans community. 

After graduating high school, Mr. Israel attended Tulane University, where he played on the school's football team. An injury during his first year on the team, however, ended his football career. ▮▮▮▮

Mr. Israel never graduated from Tulane; instead, he left during his senior year to work on Wall Street for Frederic J. Graber & Co., where he had worked as an intern the previous summer. Mr. Israel remained at that firm from 1982 until 1988, then worked at several other Wall Street firms for brief periods until he joined Omega Advisors in 1993. Omega Advisors was very successful during Mr. Israel's tenure, with the fund's assets growing from $250 million to $3 billion.

In 1995, Mr. Israel formed a hedge fund called the Bayou Fund. Although the fund was not successful, Mr. Israel and others at the fund hid this fact from investors, and instead maintained the false perception that the fund was growing and successful in order to maintain its operations and secure additional investors. When the fund collapsed in 2005, its investors lost their investments. Mr. Israel's role in this fraud resulted in his underlying guilty pleas for conspiracy to commit investment advisor fraud, investment advisor fraud, and mail fraud.

Throughout his life, Mr. Israel has been very close to certain members of his family. Prior to his incarceration, Mr. Israel spoke on a daily basis with his now 74-year-old mother, Ann Israel, and she relied on him to make medical decisions for her and Mr. Israel's father, who passed away last August. Mr. Israel was also close with his two brothers, and spoke to both of them three to four times per week. Mr. Israel was especially close with his son J▮▮, now ▮▮. Mr. Israel continues to be in close contact with these family members to the extent

---

[2] This letter presents a summary of Mr. Israel's personal background. The sentencing memorandum for Mr. Israel's underlying offense explained Mr. Israel's personal history in greater detail. For the Court's convenience, that memorandum is enclosed with this letter.

allowed by the terms of his incarceration. Although Mr. Israel had a strained relationship with his daughter S▮▮▮▮▮ (now ▮) after his marriage to her mother ended in 2006, their relationship has improved, and they too are now back in regular contact to the extent possible.



### Offense Conduct

On September 29, 2005, Mr. Israel pled guilty in the U.S. District Court for the Southern District of New York to a three-count Information that charged him with investment advisor fraud, conspiracy to commit investment advisor fraud, and mail fraud. As noted above, these charges stemmed from Mr. Israel's involvement with the Bayou Fund. After pleading guilty, Mr. Israel participated in dozens of proffer sessions with the U.S. Attorney's Office, the Federal Bureau of Investigations, and other investigatory and regulatory agencies to provide information concerning the Bayou Fund, its employees, investors, and investments, as well as information concerning Mr. Israel's co-defendants and their conduct. Based upon the substantial

assistance Mr. Israel provided in connection with these charges, the U.S. Attorney's Office submitted a letter to the sentencing judge on Mr. Israel's behalf pursuant to section 5K1.1 of the Sentencing Guidelines. Despite Mr. Israel's cooperation and other mitigating factors, however, on April 14, 2008, the District Court imposed a sentence of 20 years imprisonment upon Mr. Israel for these crimes.[3] This was one of the harshest sentences—if not the harshest sentence—ever imposed upon a cooperating white-collar criminal defendant in the Southern District of New York.[4]

       Throughout the duration of the underlying case, Mr. Israel had been released on bail subject to conditions set by the Court. The District Court permitted Mr. Israel to voluntarily surrender to start serving his 20 year sentence, and set a surrender date of June 9, 2008, nearly two months after his sentencing hearing.

       Mr. Israel continued to comply with the Court's bail conditions after sentencing and regularly reported to Pre-Trial Services. As the June 9, 2008 surrender date approached, however, Mr. Israel panicked. He understood that he bore full responsibility for his crimes and for the significant harm he caused the Bayou Fund's investors. Yet, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, Mr. Israel became panicked that his 20 year sentence would constitute a life sentence for him. Unable to overcome this fear, Mr. Israel made a last-ditch and ill-considered attempt to avoid the inevitable. Early on June 9, 2008, Mr. Israel drove to the Bear Mountain Bridge near Cortlandt, New York and abandoned his car in a manner that indicated he committed suicide. See PSR ¶ 17. He then went to a rest area and picked up a RV that he had parked there. Id. Mr. Israel left in the RV and remained at large for three weeks until he surrendered himself to local authorities in Southwick, Massachusetts on July 2, 2008. See id.

       On March 16, 2009, Mr. Israel pled guilty before this Court to a one-count Information charging him with failing to surrender for service of sentence in violation of 18 U.S.C. § 3143(a)(2). The statute provides for a maximum sentence of 10 years with no mandatory minimum punishment. 18 U.S.C. §3146(b)(1)(A)(i). Mr. Israel has been continuously in custody since surrendering himself on July 2, 2008, and he will not be released from custody until he serves both his 20 year sentence and the consecutive sentence that will be imposed for this additional crime. Since his incarceration, Mr. Israel has had time to reflect upon his conduct. He wishes to convey to the Court his knowledge that what he did was wrong, and that he sincerely regrets his actions.

---

[3] As discussed in more detail below, that 20 year sentence was recently affirmed on appeal. United States v. Israel, No. 08-1972-Cr., 2009 WL 1740252 (2d Cir. June 19, 2009) (summary order).

[4] Indeed, recent data indicates that the average sentence of a white-collar defendant convicted in federal court of a fraud involving $400 million or more of loss is 184 months imprisonment. See Aff. of Herbert Hoelter at ¶ 7 & exhibit A, United States v. Madoff, 09 CR. 213 (DC), Docket # 84 (June 19, 2009) (providing statistical data and analysis for years 1999 to 2008).

MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.

Honorable Kenneth M. Karas
July 1, 2009
Page 5 of 7

### Guidelines Calculation

      Mr. Israel does not object to the Guidelines calculation in the PSR. PSR ¶¶ 24-45. The base offense level for a violation of 18 U.S.C. § 3146 under Sentencing Guidelines section 2J1.6(a) is 11. PSR ¶ 26. Mr. Israel's acceptance of responsibility for the offense provides a two level reduction pursuant to section 3E1.1(a) of the Guidelines. PSR ¶ 32. This calculation results in a final offense level of 9. PSR ¶ 35. Mr. Israel has 7 criminal history points, resulting in a Criminal History category of IV. PSR ¶ 45. These points are calculated as follows: 3 points for his underlying conviction, 1 point for a New York State DUI offense in 1999, and 3 additional points pursuant to Guidelines sections 4A1.1(d) and (e) for committing the instant offense while on escape status. Guidelines § 4A1.1; see PSR ¶¶ 36-45. Based upon a final offense level of 9 and a Criminal History category of IV, the sentencing table provides for a sentencing range of 12 to 18 months imprisonment. PSR ¶ 84.

### Sentencing Request

      We respectfully request that the Court follow the recommendation of the Probation Department and sentence Mr. Israel to a term of 12 months imprisonment for this offense. PSR at 21. Based on the statute, this sentence must be imposed as consecutive to Mr. Israel's underlying 20 year sentence, which was recently affirmed on appeal. 18 U.S.C. § 3146(b)(2). We respectfully submit that this recommended sentence will satisfy the mandate of 18 U.S.C. § 3553(a) in light of Mr. Israel's significant health problems and reduced life expectancy, the 20 year sentence he must serve for his underlying convictions, and the fact that Mr. Israel surrendered to authorities less than one month after his original surrender date.

      Title 18 of the United States Code, Section 3553(a)(1), directs sentencing courts to consider the "history and characteristics of the defendant" in imposing sentence. As outlined above, Mr. Israel suffers from serious medical problems that will likely both shorten his life and enhance the severity of his terms of confinement. Numerous district courts within the Second Circuit have recognized this to be a proper basis for imposing a more moderate sentence, including in cases where the defendant suffered from similarly severe medical problems. See, e.g., United States v. Barbato, No. 00 Cr. 1028, 2002 WL 31556376 (S.D.N.Y. Nov. 15, 2002) (reducing defendant's sentence by half due to medical problems ███████████); United States v. Hernandez, No. 03 Cr. 1257, 2005 WL 1242344 (S.D.N.Y. May 24, 2005) (granting lower non-guidelines sentence in light of defendant's serious health problems under § 3553(a)). Additionally, the Court must consider the appropriate sentence for Mr. Israel in light of the 20 year sentence that he must complete before he starts serving his sentence for this crime. See United States v. Bryson, 229 F.3d 425, 426 (2d Cir. 2000) ("[A] court's duty is always to sentence the defendant as he stands before the court on the day of sentencing."). ███████████████████████████████████, this consideration weighs heavily against imposing a harsh sentence in this case.

MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.
Honorable Kenneth M. Karas
July 1, 2009
Page 6 of 7

      The recommended sentence will also satisfy the sentencing considerations outlined in 18 U.S.C. § 3553(a)(2). The statute directs sentencing courts to impose the minimum sentence necessary "to protect the public from further crimes of the defendant," "to afford adequate deterrence to criminal conduct," to "reflect the seriousness of the offense," "to promote respect for the law," and to provide rehabilitation to the defendant. 18 U.S.C. § 3553(a)(2). Clearly, Mr. Israel's 20 year sentence will deter him from committing further crimes. If he lives to finish serving this 20 year term, ███████████████████████████████████████, hardly someone capable of committing similar crimes in the future. See United States v. Sanchez, No. 99 Cr. 338-12, 2007 WL 60517, at *4 (S.D.N.Y. Jan. 8, 2007) (recognizing the deterrent effect of aging); Simon v. United States, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) (same). Accordingly, viewed in context, there is little need to deter Mr. Israel from future crimes by imposing a lengthy sentence in this case.

      At the same time, the question of general deterrence also counsels for moderation here. Mr. Israel made an impulsive decision to flee out of panic in the final days before his surrender date. Prior to this, Mr. Israel had fully complied with his conditions of bail for nearly three years. While Mr. Israel's conduct undoubtedly disrespected the law, he ultimately took responsibility for his actions and surrendered himself to authorities. By contrast, the case law for violations of this statute is replete with examples of defendants who remained at large for many years before law enforcement finally captured them. See, e.g., United States v. Ducharme, 193 F.3d 559, 560 (2d Cir. 1999) (defendant remained a fugitive for over 15 years until his re-arrest); United States v. Collante, 278 Fed. Appx. 69 (2d Cir. 2008) (defendant re-arrested after almost 13 years as a fugitive); United States v. Hernandez, No. 03 Cr. 805-01, 2007 WL 1284143, at *2 (S.D.N.Y. Apr. 30, 2007) (defendant missing for nearly 3 years until his re-arrest abroad and extradition to the U.S.); United States v. Restrepo, No. 03 CR. 1350, 2004 WL 875860, at *2 (S.D.N.Y. Apr. 22, 2004) (defendant missing for 9 years until his re-arrest). A sentence of 12 months incarceration would both promote respect for the law by imposing jail time for this conduct while also sending a message to would-be offenders that a call to conscience will be accounted for by the Court at sentencing.

      Indeed, Sentencing Guideline section 2J1.6(b)(1)(A) recognizes that a more moderate sentence should be granted to a defendant who turns himself in to authorities shortly after initially failing to surrender. Specifically, that section provides for a 5 level decrease in the defendant's offense level if the defendant "voluntarily surrendered within 96 hours of the time he was originally scheduled to report for service of sentence." Guidelines § 2J1.6(b)(1)(A). While this section does not directly apply to Mr. Israel, it reflects the general proposition that self-surrender is recognized as a favorable sentencing factor under certain circumstances.

      Further, such a sentence reflects the seriousness of the offense, promotes respect for the law, and provides an opportunity for rehabilitation. Given that the Court must sentence Mr. Israel as he now stands before the Court, Bryson, 229 F.3d at 426, the appropriate sentence

MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.

Honorable Kenneth M. Karas
July 1, 2009
Page 7 of 7

in this case should be viewed against the backdrop of Mr. Israel's underlying sentence and the total number of years he will be incarcerated. By any standard, Mr. Israel's 20 year sentence is harsh punishment. See supra note 4. Adding an additional year onto that sentence, for a total of 21 years incarceration, would highlight the seriousness of both of these offenses: at best, Mr. Israel would emerge from prison as a 70-year-old man ▮. He will have been forced to miss many important years in the lives of his loved ones—in particular, his son J▮, now ▮, will be ▮ years old—and he will likely miss the remaining years of his now-elderly mother's life. Yet, at the same time, a 12 month sentence will also promote the goal of rehabilitation, as it will give Mr. Israel some chance of surviving both sentences. Simon, 361 F. Supp. 2d at 48 ("rehabilitation cannot be served if a defendant can look forward to nothing beyond imprisonment"). Viewed in context, the recommended sentence would satisfy all the elements of the section 3553(a) mandate.

\*     \*     \*     \*

For all of these reasons, we respectfully request that the Court impose a sentence of 12 months imprisonment, as recommended by the Probation Department. In light of the fact that this letter contains information concerning Mr. Israel's medical condition and care, as well as information relating to his minor child, we respectfully request that Your Honor not docket it. A redacted version of this letter has been publicly filed. Thank you for considering this submission.

Respectfully submitted,

*[signature]*

Barry A. Bohrer
Barbara L. Trencher
MORVILLO, ABRAMOWITZ, GRAND,
IASON, ANELLO & BOHRER, P.C.
*Attorneys for Samuel Israel III*
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

cc: AUSA Sarah R. Krissoff
    U.S. Probation Officer Diane M. Plummer